United States District Court
Southern District of Texas
**ENTERED**
July 27, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| RICARDO H LOPEZ, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil No. 5:25-cv-00069 |
| | § | |
| BED, BATH AND BEYOND, INC., | § | |
| COMENITY CAPITAL BANK, | § | |
| and MIDLAND CREDIT | § | |
| MANAGEMENT, | § | |
| *Defendants.* | § | |

## REPORT AND RECOMMENDATION

Before the Court are Defendant Comenity Capital Bank's Motion to Compel Arbitration filed on January 7, 2026, Dkt. No. 24, and Defendant Midland Credit Management's Motion to Compel Arbitration filed on April 2, 2026. Dkt. No. 30. Plaintiff filed responses to each motion, Dkt. Nos. 26, 38, and each Defendant filed their respective replies, Dkt. Nos. 27, 39. Plaintiff then filed an additional response to Defendant Midland Credit Management's reply. Dkt. No. 41.[1] Both motions to compel arbitration were referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1). Dkt. Nos. 28, 31. Following a review of the law and facts, the undersigned respectfully **RECOMMENDS** that Defendant Comenity Capital Bank's Motion to Compel Arbitration, Dkt. No. 24, be **GRANTED**, that Defendant Midland

---

[1] The Court notes that Plaintiff sent both his request for judicial notice, Dkt. No. 40, and his response to Defendant Midland Credit Management's Reply Brief in Support of Motion to Compel Arbitration, Dkt. No. 41, to the Court by email. While the Court elected to accommodate the pro se Plaintiff in this instance, Plaintiff is **WARNED** that future motions that are not properly filed via the Court's electronic case filing (ECF) system may be **STRICKEN** for violating local procedural rules. *See* S.D. Tex. L.R. 5.1.

1

Credit Management's Motion to Compel Arbitration, Dkt. No. 30, be **GRANTED**, and Plaintiff's claims against Defendants, Dkt. No. 1, be **STAYED** pending the outcome of arbitration.

### *Background*

In April 2021, Plaintiff Ricardo H. Lopez applied for a Bed Bath & Beyond-branded credit card, and an account was opened in his name. Dkt. Nos. 24-1 at ¶ 9, 26 at 2; *see also* Dkt. No. 24-1 at 10–16 (Plaintiff's application). Defendant Comenity Capital Bank ("CCB"), a subsidiary of Bread Financial Payments, Inc. f/k/a Comenity, LLC, issued and serviced Plaintiff's Bed Bath & Beyond branded credit card account. Dkt. No. 24-1 at ¶¶ 1–2, 5. During the process, Defendant CCB showed Plaintiff a copy of Bed Bath & Beyond's standard credit card agreement, and Plaintiff was required to consent to its terms before submitting the application. Dkt. No. 24-1 at ¶¶ 10–12; Dkt. No. 26 at 2. Subsequently and pursuant to CCB's standard practice, a copy of the same agreement and Plaintiff's approved credit card were mailed to the account address Plaintiff provided in the application. Dkt. No. 24-1 at ¶ 14; Dkt. No. 26 at 2. The credit card agreement contained an arbitration clause, including the following provisions:

> Review this provision carefully. If you do not reject it in accordance with Paragraph C.1, Right to Reject, below, it will be part of this Agreement and will have a substantial impact on the way you or we will resolve any Claim you or we have against each other now and in the future.
>
> . . . .
>
> "Claim" means any claim, dispute, or controversy between you and us that in any way arises from or relates to this Agreement, the Account, the issuance of any Card, any rewards program and/or any prior agreement or account. . . . "Claim has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims, and third-party claims. It includes disputes based on contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief). "Claim" does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Provision or any part thereof . . . all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that

> concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.
>
> . . . .
>
> If you or we elect to arbitrate a Claim, you will not have the right to pursue that Claim in court or have a jury decide the Claim.  Also, your ability to obtain information from us is more limited in arbitration than in a lawsuit.  Other rights that you would have if you went to court may also not be available in arbitration.

Dkt. No. 24-1 at 8.  The agreement also contained an opt-out provision that allowed customers to do so by "mailing [CCB] a rejection notice" which includes the customer's name and a statement rejecting arbitration "within 30 calendar days."  *Id.*; Dkt. No. 24 at 3.  There is no indication in the record that Plaintiff availed himself of this provision by mailing a rejection notice.  *See* Dkt. No. 24-1 at ¶ 17.  Moreover, there is ample evidence in the record that Plaintiff used the credit card after the agreement was executed and before discovering the contested charge in this case.  *Id.* at 70–82.

On or about November 21, 2021, Plaintiff discovered a $29.00 charge on his Bed Bath & Beyond account that he believed to be fraudulent. Dkt. No. 26 at 2.  Plaintiff claims that he notified Defendants Bed Bath & Beyond and CCB that the transaction was fraudulent, but CCB "failed to conduct a reasonable investigation, continued to treat the charge as valid, and continued to report the account to consumer reporting agencies as delinquent or in default, thereby damaging Plaintiff's credit standing."  Dkt. No. 26 at 2.  Defendant Midland Credit Management ("Midland") purchased Plaintiff's account from Defendant CCB, subject to existing disputes, defenses and claims, on September 26, 2022.  Dkt. Nos. 40-3, 41-3.  Plaintiff sent Defendant Midland a formal dispute letter in November 2022 to no avail.  Dkt. No. 41-4.

On or about May 9. 2025, Plaintiff initiated a lawsuit against Defendant Bed Bath & Beyond, Defendant CCB, and Defendant Midland, bringing claims under the Federal Debt

Collection Practices Act ("FDCPA") and Fair Credit Report Act ("FCRA").  Dkt. No.1.

Specifically, Plaintiff claims that Defendants failed to properly investigate certain charges and

furnished inaccurate, negative information to consumer reporting agencies.  Dkt. No.1 at 4.  In

response, both Defendant CCB and Defendant Midland filed motions to compel arbitration,

seeking enforcement of the arbitration clause contained in the credit card agreement.  Dkt. Nos.

24, 30.

### *Legal Standards*

"A motion to compel arbitration is generally treated as a motion to dismiss."  *Vine v. PLS*

*Fin. Servs., Inc.*, 689 F. App'x 800, 802 (5th Cir. 2017).  If, however, the court considers matters

outside the pleadings in deciding the motion, "the motion must be treated as one for summary

judgment under Rule 56."  Fed. R. Civ. P. 12(d); *see also Amoco Chem. Co. v. Tex Tin Corp.*, 925

F. Supp. 1192, 1206 (S.D. Tex. 1996) ("If the Court relies upon evidence submitted along with the

motion, the standards governing motions for summary judgment apply.").  Under this standard,

the movant will prevail if they show that there is no genuine dispute as to any material fact and

that they are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Courts applying the

summary-judgment standard to motions to compel arbitration "have generally found it appropriate

'because the district court's order compelling arbitration is in effect a summary disposition of the

issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'"

*StrucSure Home Warranty, LLC v. Sulzbach*, Civil Action No. 4:20-CV-2915, 2021 WL 4240887,

at *2 (S.D. Tex. Jan. 25, 2021) (quoting *Jackson v Royal Caribbean Cruises, Ltd.*, 389 F. Supp.

3d 431, 443–44 (N.D. Tex. 2019)).

This matter is governed by the Federal Arbitration Act ("FAA"), which Congress enacted

in 1925 to "reverse the longstanding judicial hostility to arbitration agreements" and "to place

arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219–20 and n.6 (1985)); *see also* 9 U.S.C. § 1 *et seq.*.  The FAA reflects a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary" and requires courts to enforce private arbitration agreements according to their terms. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Mem l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  Under the FAA, "a party [may] move to compel arbitration when an opposing party refuses to arbitrate issues covered by a valid arbitration agreement." *Nat'l Shipping Co. of Saudi Arabia v. Valero Mktg. & Supply Co.*, Civil Action No. H-19-1096 & H-19-4115, 2019 WL 13036074, at *3 (S.D. Tex. Dec. 26, 2019) (citing *Am. Bankers Ins. Co. of Fla. V. Inman*, 436 F.3d 490, 493 (5th Cir. 2006)).

Section Two of the FAA provides that a written arbitration provision is "valid, irrevocable, and enforceable" as long as it satisfies the statutory elements:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such a contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

9 U.S.C. § 2.  The Fifth Circuit applies the FAA framework through a two-step analysis: First, the court determines "whether the parties entered into any arbitration agreement at all.  The second [step] involves contract interpretation to determine whether this claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis omitted) (citing *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). "Ordinarily both steps are questions for the court." *Id.*

5

Whether the parties entered a valid arbitration agreement is governed by state contract law. *Id.* at 202.  Under the Section Two savings clause of the FAA, the Supreme Court ruled that "state law, whether of legislative or judicial origin, is applicable [to arbitration agreements] *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."  *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987); *see also Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008) (explaining that the issue of whether there is a valid arbitration agreement "is generally made on the basis of ordinary state-law principles that govern the formation of contracts" (quoting *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)) (internal quotation marks omitted)).  The Court further clarified that "[g]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements . . . ."  *Doctor s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 682 (1996).  Due to the presumption in favor of arbitration, "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity."  *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).  The parties do not dispute that Texas law applies here. *See Morrison*, 517 F.3d at 254 (applying "Texas law, which is the law of the forum, there having been no showing that the law of any other arguably more appropriate state materially differs in respect to the present issue").

Section Three of the FAA governs the procedural consequence if the Court finds that the parties are subject to a valid arbitration agreement.  The court, "upon being satisfied" that the issue is referable to arbitration, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," so long as the party seeking the stay is not "in default in proceeding with such arbitration."  9 U.S.C. § 3.  The stay is mandatory when the statutory requirements are met and a party requests it, and the court may not

6

dismiss the action. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

### *Discussion*

The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's underlying claims arise under federal law. Specifically, Plaintiff's claims arise under the Fair Debt Collection Practices Act ("FDCP") and the Fair Credit Reporting Act ("FRCA"). In his Complaint, Plaintiff seeks "statutory damage under the FDCPA and FCRA." Dkt. No. 1 at 5. Accordingly, the Court has jurisdiction to consider this case and Defendants' motion to compel arbitration.

With the jurisdiction requirement satisfied, the Court turns to Defendants' motions to compel arbitration. To prevail on their motions, Defendants must show that there is no genuine dispute of material fact, and Defendants are entitled to have the Court enforce the arbitration clause as a matter of law. *See* Fed. R. Civ. P. 56(a). Regarding the arbitration agreement, Plaintiff's primary argument is that he did not knowingly agree to the arbitration clause contained in the credit card agreement. Dkt. No. 38 at 2. Contrary to Plaintiff's claims that "the existence, formation, scope, and enforceability of any arbitration agreement remain disputed factual issues," "the existence, formation, scope, and enforceability" of the arbitration agreement are not issues of fact but questions of law. *See Kubala*, 830 F.3d at 202 ("Whether they entered a valid arbitration contract turns on state contract law." (citing *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012))); *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018) ("Determining whether there is a valid arbitration agreement is a question of state contract law and is for the court." (citing *Kubala*, 830 F.3d at 202)); *Scaife v. Associated Air Ctr., Inc.*, 100 F.3d 406, 410 (5th Cir. 1996) ("When reviewing written negotiations, the question of whether an offer

was accepted and a contract was formed is primarily a question of law for the court to decide."
(citing *S&A Marinas, Inc. v. Leonard Marine Corp.*, 875 S.W.2d 766, 769 (Tex. Ct. App. 1994)));
*Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469, 471 (5th Cir. 1991) ("Whether a contract
exists involves both questions of fact—such as the intent of the parties—and questions of law—
such as whether[] the facts as found constitute a contract." (citing *United States v. Maldonado*, 735
F.2d 809, 814 (5th Cir. 1984))).  Therefore, the proper standard to apply is whether Defendants
are entitled to judgment on their motions to compel arbitration as a matter of law.  Fed. R. Civ. P.
56(a).

Defendants claim that the relevant agreement involves interstate commerce, and Plaintiff
did not contest.  Dkt. No. 24 at 8–9; Dkt. No. 30 at 10–11.  The Section Two inquiry therefore
turns on whether an arbitration agreement had been formed, whether the agreement is valid under
the general contract-law framework, and whether Plaintiff's FDCPA and FCRA claims fall within
the scope of that agreement.  *See Kubala*, 830 F.3d at 201 (citing *Will-Drill Res., Inc.*, 352 F.3d at
214).  At this stage, the Court considers only the validity of the arbitration provision under the
FAA framework and the nature of Plaintiff's claims to determine whether they fall within the scope
of arbitration without proceeding to the merits of the case.  *Banc One Acceptance Corp. v. Hill*,
367 F.3d 426, 429 (5th Cir. 2004) ("In conducting this two-step inquiry, courts must not consider
the merits of the underlying action." (citing *Snap-On Tools Corp. v. Mason*, 18 F.3d 1261, 1267
(5th Cir. 1994))).

a.  Arbitration Agreement

"When a party seeks to compel arbitration based on a contract, the first, and perhaps most
obvious, question for the court is whether there is a contract between the parties at all."  *Arnold v.
Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018).  In fact, "courts should order arbitration of a

8

dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor . . . its enforceability or applicability to the dispute is in issue." *Granite Rock Co. v. Int'l Bros. of Teamsters*, 561 U.S. 287, 299 (2010) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). Thus, the Court first must determine whether a valid contract has been formed between parties. *Id.* Plaintiff argues there is no proof that he noticed, received, and assented to the provision, Dkt. No. 26 at 3–4, while Defendants contend that they properly mailed the notice to Plaintiff's address of record, Dkt. No. 24 at 3.

Because arbitration is a matter of contract, the Court applies ordinary state-law formation principles to determine whether a valid arbitration agreement exists. *First Options of Chi., Inc.*, 514 U.S. at 944 (1995) ("[C]ourts generally . . . should apply ordinary state-law principles that govern the formation of contracts."); *see also Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). Texas law follows the same rule: "Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005).

Here, the record shows the formation of a valid contract that included an agreement to arbitrate. First, Plaintiff applied for and opened the credit card account. Dkt. Nos. 24-1 at ¶ 9, 26 at 2; *see also* Dkt. No. 24-1 at 10–16 (Plaintiff's application). Second, Defendants issued Plaintiff the credit card and mailed the Cardmember Agreement with the card; that Agreement contained the arbitration provision. Dkt. No. 24-1 at ¶ 14; *see also* Dkt. No. 24-1 at 6–8 (copy of CCB's standard Cardmember Agreement). Third, both Parties' records show that Plaintiff used the card without incident for several months after receiving the cardmember Agreement and before the disputed transaction arose. Dkt. Nos. 24-1 ¶ 18, 26 at 2; *see also* Dkt. No. 24-1 at 70–82. (periodic statements for the Account). Under Texas law, "if one party signs a contract, the other may accept

by her acts, conduct, or acquiescence to the terms of the contract, making it a binding agreement on both parties." *Jones v. Citibank (S.D.)*, N.A., 235 S.W.3d 333, 338–39 (Tex. App. 2007). In fact, under similar circumstances— where a plaintiff applied for a retail credit card, the arbitration provision appeared in the original cardmember agreement mailed with the card, and the plaintiff later used the card—courts have held that a valid arbitration agreement was formed. *See Jones v. NetSpend Card Co.*, No. 1:17-CV-304-RP, 2018 WL 2427376, at *2 (W.D. Tex. May 30, 2018) (finding that the plaintiff accepted the cardholder agreement where he received the agreement; "the arbitration clause in the Agreement was clearly labeled, in ordinary font, and with several sections bolded"; and the plaintiff used the card after receiving the agreement); *Moore v. Green Dot Bank*, No. SA-24-CV-01150-XR, 2025 WL 1667389, at *4 (W.D. Tex. May 5, 2025) ("In the context of a credit card, courts have determined that even if the party does not sign the credit card agreement and even if the credit card agreement is not delivered to the party, a party is bound by the terms of the credit card agreement if the party uses the card."); *Johnson v. Discover Fin. Servs. LLC*, No. 3:25-CV-241-E-BN, 2025 WL 2181695, at *6 (N.D. Tex. July 14, 2025) (finding that "'the undisputed evidence' reflects that [the plaintiff] activated and used the credit card account," and that, "'because [the plaintiff] activated and used that account, she manifested an intent to be bound by the arbitration agreement, and accordingly she is bound by the terms of the arbitration agreement.'" (quoting *Moore*, 2025 WL 1667389, at *4) (original alterations omitted)).

Furthermore, it is worth noting that the Agreement's own language includes the phrasing that "[y]ou accept this Agreement if you use the Account." Dkt. No. 24-1 at 7 (copy of CCB's standard Cardmember Agreement). Again, Plaintiff used the card after receiving the Agreement and before the disputed transaction arose. Dkt. Nos. 24-1 ¶ 18, 26 at 2; *see also* Dkt. No. 24-1 at 70–82. Courts "have upheld credit card terms stating that use of the card constitutes acceptance

10

of the card's terms." *Williams v. Discover Bank*, Civil Action No. H-24-2599, 2024 WL 3852363, at \*2 (S.D. Tex. Aug. 15, 2024) (citing *Stinger v. Chase Bank, USA N.A.*, 265 F. App'x 224, 227 (5th Cir. 2008)); *see also Benser v. Citibank (S. Dakota), N.A.*, No. 08-99-00242-CV, 2000 WL 1231386, at \*5 (Tex. App., Aug. 31, 2000); *Winchek v. Am. Express Travel Related Servs. Co.*, 232 S.W.3d 197, 204 (Tex. App. 2007). Accordingly, the record contains sufficient evidence of conduct by the parties manifesting mutual assent to form a valid arbitration agreement.

Thus, because Plaintiff was mailed the cardholder agreement, the arbitration clause in the agreement was clearly labeled and even bolded in some sections, and Plaintiff continued to use the card after receiving the agreement, the undersigned finds that Plaintiff assented to the arbitration clause in this case. *See* Dkt. No. 24-1 at 8, 70–82.

Having found that the arbitration agreement was formed under proper presentation and acceptance, the FAA's saving clause requires the Court to conduct an independent inquiry under applicable state contract law. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."); *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004) ("[A]rbitration agreements and clauses are to be enforced *unless* they are invalid under principles of state law that govern all contracts."); *Banc One Acceptance Corp.*, 367 F.3d at 431 ("[T]he validity of an arbitration provision is a question of state law . . . ."); *Luxton v. J Bar Enters., LLC*, No. 1:25-cv-749-DAE, 2025 WL 4771077, at \*3 (W.D. Tex. Nov. 7, 2025) ("An agreement to arbitrate is valid under the FAA if it meets the requirements of the general contract law of the applicable state." (citing *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 479 n.2 (5th Cir. 2003)). Here, Plaintiff contends that the arbitration provision is both procedurally and substantively

unconscionable. Dkt. No. 26 at 5.  Plaintiff's grounds for contending procedural unconscionability include words in fine print, lack of conspicuous notice and explanations, bargaining power disparities, and that an ordinary customer "who never focused on arbitration language" would not be aware of the opt-out option.  Dkt. No. 26 at 5.  We address each argument in turn.

First of all, Plaintiff's reliance on fine print and lack of conspicuous notice does not establish procedural unconscionability.  According to the Supreme Court of Texas, "[a]bsent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms."  *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (citing *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996)).  The Supreme Court of the state therefore impose a duty to read: contracting parties "have an obligation to protect themselves by reading what they sign."  *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962). Secondly, Texas law does not require the drafter to separately explain the arbitration parts of the contract.  In *In Re Palm Harbor Homes, Inc.*, the Supreme Court of Texas rejected procedural unconscionability where the plaintiffs asserted that they were unsophisticated and that "if the concept of arbitration had been explained to them, [they] would not have signed the arbitration agreements."  195 S.W.3d 672, 679 (Tex. 2006).  Finally, Plaintiff's reliance on the disparity between an individual consumer and corporate bank does not change the result.  "Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable . . . ."  *Gilmer,* 500 U.S. at 33; *see also EZ Pawn Corp.*, 934 S.W.2d at  90–91. Accordingly, Plaintiff's procedural unconscionability arguments do not defeat enforcement of the arbitration provision.

Plaintiff argues substantive unconscionability upon two grounds: that arbitration leads to a disfavorable and "harsh" outcome of the case, and that arbitration is against public policy in

12

"shielding CCB's investigative failures" from "public scrutiny." Dkt. No. 26 at 5. These arguments are likewise futile. Substantive unconscionability concerns the fairness of the arbitration provision itself, not Plaintiff's subjective prediction and sentiment about the potential outcome of arbitration. *See In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). To find substantive unconscionability, the court must find that the terms themselves are "so one-sided that they are unconscionable under the circumstances existing when the parties made the contract," rather than whether a party believes arbitration will be unfavorable to them. *Id*. Under similar circumstances, the Fifth Circuit in *Stinger v. Chase Bank, USA, N.A.* found Chase Bank's credit card arbitration provision not unconscionable because they "were not one-sided, but bilateral: were Chase to bring claims against Stinger, Stinger could compel arbitration." 265 F. App'x at 229.

The same bilateral feature exists here. Defendant Bed Bath & Beyond's standard-form contract states that the arbitration agreement "will have a substantial impact on . . . any claim you or we have against *each other* . . . ." Dkt. No. 24-1 at 8; Dkt. No. 24 at 3. (emphasis added). Additionally, while the Court understands Plaintiff's plight and the importance of corporate responsibilities, this normative concern does not translate into any existing legal doctrine. The undersigned therefore has no need to address this policy-based argument. The Supreme Court has enforced arbitration provisions invoked by corporate entities notwithstanding policy objections that arbitration may reduce public litigation, *AT&T Mobility LLC*, 563 U.S. 333 (2011); *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013), and corporate use of arbitral forums has become widespread. Therefore, the arbitration agreement is not unconscionable and is valid under the general contract-law framework.

b.  Scope of Arbitration Agreement Coverage

Having established that the parties formed a valid arbitration agreement, the Court next considers whether Plaintiff's FDCPA and FCRA claims fall within the scope of that provision. *See Kubala*, 830 F.3d at 201.  Plaintiff insists that his FDCPA and FCRA claims arise from independent statutory duties that were allegedly breached by Defendants, Dkt. No. 26 at 4–5; whereas Defendants argue (1) that doubts concerning the scope of arbitrability should by default be considered in favor of arbitration, and the burden of proving otherwise falls upon the plaintiff; and (2) that courts in the Fifth Circuit have repeatedly held FCRA and FDCPA claims arbitrable under FAA-validated provisions.  Dkt. Nos. 24 at 10; 27 at 4–5.

The Court finds Defendants' position more persuasive and supported by legal authority. Defendants correctly stated that the scope inquiry is governed by a presumption in favor of arbitration.  Once a valid arbitration agreement exists, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.  The Fifth Circuit adopts the same rule: courts "resolve doubts concerning the scope of coverage of an arbitration clause in a contract in favor of arbitration." *Neal v. Hardee s Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990).  Here, Plaintiff's argument that his claims arise from independent federal statutes does not place those claims outside the account relationship and transactions governed by the arbitration agreement.  And because any ambiguity on that question is resolved in favor of arbitration, Plaintiff bears the burden of showing that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987).  Plaintiff has not met this burden here.

14

First, the arbitration provision covers a broad swath of claims: "'Claim' has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims, and third-party claims. It includes disputes based on *contract*, tort, consumer rights, *fraud* and other intentional torts, constitution, *statute*, regulation, ordinance, common law and *equity* . . . ." Dkt. No. 24-1 at 8 (emphasis added). Plaintiff's contract, fraud, statutory, and equitable claims thus fall cleanly within the scope of this provision. The agreement further provides that should either party "elect to arbitrate a claim, [Plaintiff] will not have the right to pursue that Claim in court . . . ." *Id.* The four corners of this agreement are not ambiguous. Even if they were, however, Plaintiff has not met his burden to show that Congress meant to preclude the waiver of judicial remedies for his rights under the FDCPA and FCRA.

On the contrary, "multiple courts [in] the Fifth Circuit" have affirmed the arbitrability of FCRA claims. *Edwards v. Experian Info. Sols., Inc.*, No. DR-24-CV-00021-AM-MHW, 2024 WL 4328773, at *4 (W.D. Tex. Aug. 1, 2024) (collecting cases including *Allen v. Experian Info. Sols., Inc.*, No. SA-24-CV-00157, 2024 WL 2228164, at *5 (W.D. Tex. May 16, 2024); *Grether v. South Point Pontiac/Cadillac*, No. A-13-CA-1069, 2014 WL 1350907, at *3 (W.D. Tex. Apr. 3, 2014); *Tolliver v. Covington Credit*, No. 3:19-CV-02655, 2020 WL 2841393, at *2 (N.D. Tex. May 30, 2020); *Freeman v. Am. Credit Acceptance*, No. 4:20-CV-1211, 2020 WL 7974294, at *2 (N.D. Tex. Dec 21, 2020), *report and recommendation adopted by* 2021 WL 1015956 (N.D. Tex. Mar. 17, 2021); *Hanberry v. First Premier Bank*, No. 19-10235, 2019 WL 4415267 (E.D. La. Sept. 16, 2019); and *Barron v. Best Buy Co.*, No. 3:16-CV-690, 2017 WL 5659973, at *2 (S.D. Miss. Apr. 5, 2017)), *report and recommendation adopted by* 2024 WL 4329034 (W.D. Tex. Aug. 30, 2024). The same can be said for FDCPA claims. *See Sherer v. Green Tree Servicing, LLC*, 548 F.3d 379 (5th Cir. 2008) ("[Plaintiff's] FDCPA and FCRA claims arise from [Defendant's] conduct as

15

[Plaintiff's] loan servicer and, therefore, fall within the terms of the Loan Agreement's arbitration clause."); *Glassock v. Cottonwood Financial LTD.*, No. 4:11-CV-210, 2011 WL 4835677, at *5 (E.D. Tex. Sept. 6, 2011) ("Absent a clear declaration of Congressional intent to preclude claims under the FDCPA from arbitration, the Court finds that Plaintiff's claims are arbitrable."); *Leggett v. America's Servicing Co.*, No. 3:05-CV-1959-L, 2007 WL 2398510 (N.D. Tex. Aug. 22, 2007); *Toler v. Green Tree Servicing, LLC*, No. 08-0164, 2008 WL 2858728 (W.D. La. July 24, 2008); *see also Charles v. Portfolio Recovery Assocs., LLC*, No. 22-35613, 2024 WL 1672350 (9th Cir. Apr. 18, 2024) (unpublished) (holding that plaintiff's claims under the FDCPA were arbitrable); *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002) ("[W]e have naturally been willing to read these admittedly expansive clauses quite broadly to include all manner of claims tangentially related to the agreement, including claims of fraud, misrepresentation, and other torts involving both contract formation and performance." (citing *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999))). Here, given the existence of a valid arbitration agreement, we humbly follow the footsteps of our predecessor courts in finding Plaintiff's FCRA and FDCPA claims fall within the scope of the arbitration agreement. Because the arbitration provision satisfies the FAA framework and Plaintiff's FDCPA and FCRA claims fall within its scope, the provision is enforceable and the claims are arbitrable.

c. <u>Stay Pending Arbitration</u>

Finally, the undersigned recommends that this case be stayed pending the outcome of arbitration. *See* 9 U.S.C. § 3; *Smith*, 601 U.S. at 478. The Supreme Court recently reaffirmed *Smith*'s stay requirement in *Jules v. André Balazs Properties*, reasoning that a stay "comport[s] with the supervisory role that the FAA envisions for the courts," including the court's ability to "assist parties in arbitration by . . . appointing an arbitrator" and "facilitat[e] recovery on an arbitral

16

award." 608 U.S. ___, 146 S. Ct. 1209, 1219–20 (2026) (quoting *Smith*, 601 U.S. at 476–78). The Court further explained that "[k]eeping [a] suit on the court's docket makes good sense in light of this potential ongoing role, and it avoids costs and complications that might arise if a party were required to bring a new suit and pay a new filing fee to invoke the FAA's procedural protections." *Id.* at 1220 (second alteration in original) (quoting *Smith*, 601 U.S. at 478). As the *Jules* Court puts it, "this [*Smith*] scheme continues to work well: The FAA requires a stay, rather than dismissal, so that a court that has granted a § 3 stay can superintend the arbitration to the end."[2] *Id.* at 1220. Thus, because the Court concludes that Plaintiff's claims are referable to arbitration and Defendants have requested a stay, Section Three requires the Court to stay this case pending arbitration.

### *Conclusion*

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Defendant Community Capital Bank's Motion to Compel Arbitration, Dkt. No. 24, be **GRANTED**; that Defendant Midland Credit Management, Inc.'s Motion to Compel Arbitration and Incorporated Memorandum of Law, Dkt. No. 30, be **GRANTED**; and Plaintiff's claims against Defendants, Dkt. No. 1, be **STAYED** pending the outcome of arbitration. The undersigned further **RECOMMENDS** that the parties be **ORDERED** to file an advisory notifying the Court whether an arbitrator has been appointed within thirty days of the District Court's order staying this case. Additionally, the parties should be **ORDERED** to file an advisory notifying the Court of the outcome of arbitration **within ten days** of conducting arbitration.

---

[2] For instance, if there is a "lapse in the naming of an arbitrator," either party may request that the Court designate and appoint an arbitrator. 9 U.S.C. § 5

IT IS SO RECOMMENDED.

Signed this July 24, 2026, in Laredo, Texas.

Diana Song Quiroga
United States Magistrate Judge

### *Warnings*

The parties may file objections to this Report and Recommendation, unless they waive the right to do so. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc)).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after being served with a copy of the Report— or the party's waiver of the right to do so—shall bar that party from de novo review by the District Court of the proposed findings and recommendations and, except upon grounds of plain error, shall bar the party from appellate review of proposed factual findings and legal conclusions accepted by the District Court to which no objections were filed. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).